UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK         Chapter 7
---------------------------------------------------------------------------X
In re:

        Case No. 13-45106-CEC

VIKI DEVANI,

        Debtor.
---------------------------------------------------------------------------X

## AFFIRMATION IN SUPPORT OF MOTION TO DISMISS DEBTOR'S PETITION AS A BAD FAITH FILING AND FOR THE IMPOSITION OF SANCTIONS

TO:    Honorable Carla E. Craig
        Chief United States Bankruptcy Judge

JOHN S. DESIDERIO, the undersigned, an attorney at law duly admitted to practice before the Court of the State of New York, admitted in the Eastern District of New York, and being fully familiar with the facts and circumstances set forth herein, affirms the truth of the following under the penalties of perjury:

1. This affirmation is submitted in support of the motion of creditor John Desiderio, Sr. ("Creditor") for an Order: (a) dismissing the Chapter 7 case of VIKI DEVANI (the "Debtor") for cause pursuant to §707(a) of Title 11 of the United States Code (the "Bankruptcy Code") as it was filed in "bad faith" and barring the Debtor from making any subsequent filings under the Bankruptcy Code for a period of three years; (b) imposing sanctions upon the Debtor pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Section 105(a) of the Bankruptcy Code; (c) imposing sanctions upon VIVIAN SOBERS ("Sobers") and SOBERS LAW, PLLC ("Sobers Law"), jointly and severally with Debtor, pursuant to Bankruptcy Rule 9011, Section 105(a) of the Bankruptcy Code, and 28 U.S.C. §1927, and based upon the breach of their duties under §707(b)(4)(C) and §707(b)(4)(D) of the Bankruptcy Code;

and (d) granting such other and further relief as this Court deems just and proper, or in the alternative, for an extension of time to object to the Debtor's discharge.

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This action is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §1409.

## PROCEDURAL HISTORY

3. On August 21, 2013, Debtor, represented by Sobers and Sobers Law, filed an "emergency" voluntary petition under Chapter 7 of the Bankruptcy Code (the "Petition," "Exhibit A") in this Court. The Debtor's Petition was signed by both the Debtor and by Sobers as an attorney of Sobers Law.

4. On September 4, 2013, Debtor, by Sobers and Sobers Law, filed his schedules and statements in connection with the Petition (the "Schedules and Statements," Exhibit A). The Debtor's Schedules and Statements have never been amended.

5. On October 16, 2013, Debtor's 341 meeting was held (transcript annexed hereto as "Exhibit B").

6. Upon the unopposed application of Creditor pursuant to Rule 2004 of the Bankruptcy Rules, on November 8, 2013, this Court issued an Order (the "Examination Order", Dkt.# 24) directing, *inter alia*, that the Debtor comply with the subpoena served upon him by Creditor (the "2004 Subpoena", "Exhibit C").[1]

7. Pursuant to the Examination Order, on November 9, 2013, Creditor served the 2004 Subpoena upon Debtor and Sobers & Sobers Law by overnight mail, commanding the

---

[1] The Court should note that Creditor's application, as filed and served on September 24, 2013, contained the complete list of documents to be produced by the Debtor (Dkt.# 19).

production of various documents identified therein on or before December 2, 2013, at 10:00 a.m. (Ex. C).

## **BACKGROUND**

8. In August 2000, Creditor sold a health food business to Bharat "Peter" Devani ("Bharat"), the Debtor's father, and in connection therewith Bharat executed a promissory note in favor of Creditor.

9. In early July 2004, Creditor instituted a lawsuit against Bharat for non-payment of the promissory note.

10. By the end of July 2004, Bharat had sold his entire ownership of the aforementioned health food business to other persons, and by the end of August 2004, Bharat had sold his home. Unbeknownst to Creditor at that time, all of the monies received for the foregoing sale of assets, as well as tax refunds and other monies due to be paid to Bharat, were transferred either to the Debtor's individual bank accounts or the Debtor's business, Garden of Health, Inc.

11. In October 2004, Creditor obtained and entered judgments against Bharat (and his former business partner, Sunil Parikh) due to non-payment of the promissory note, and Creditor began enforcement of the aforesaid judgment.

12. On November 16, 2006, after thwarting Creditor's judgment enforcement efforts for two years, Bharat filed a Chapter 7 petition with this Court (Case No.: 1-06-44412), which case was assigned to Your Honor. Through the discovery process in that case, Creditor learned of multiple intentional fraudulent conveyances made from Bharat to the Debtor. Bharat's Chapter 7 is disclosed as a related case in the Statement Pursuant to Local Bankruptcy Rule 1073-2(b) of Debtor's filings.

13. On March 18, 2009, based primarily upon the aforesaid fraudulent conveyances, Creditor obtained an Order from Your Honor dismissing Bharat's Chapter 7 Case as a bad faith filing (Case No.: 1-06-44412; Dkt #54). The Court is informed that the instant case is the fourth bankruptcy with which Creditor has had to contend in this matter. In addition to Bharat's Chapter 7, Sunil Parikh, Bharat's co-debtor on the original debts owed to Creditor, previously filed a Chapter 13 case (Case No. 8-06-71203-sb), and a Chapter 7 case (Case No. 8-07-72869-reg), all of which Creditor was forced to challenge.[2]

14. On July 7, 2009, Creditor filed an action in New York Supreme Court, Queens County (the "State Court") against Debtor for recovery of the aforesaid, multiple intentional fraudulent conveyances (the "State Court Action", Creditor's Verified Complaint is annexed hereto as "Exhibit D").

15. On March 20, 2013, due to the Debtor's failure to comply with a stipulation in the State Court Action, and based upon the intentional fraudulent conveyances effected by the Debtor, Creditor obtained and entered a judgment against the Debtor in the sum of $130,632.67 with interest thereon at a rate of 9% per annum (the "Judgment", annexed hereto as "Exhibit E").

16. However, rather than making any attempt to satisfy the Judgment, Debtor hired two separate attorneys, including Sobers/Sobers Law, to stay Creditor's enforcement efforts, to attempt to vacate the Judgment, and to provide Debtor with additional time to make a past due payment to Creditor. Debtor's requested relief was based <u>solely</u> upon his alleged inability to pay due to his former partner's depletion of the business bank account of $40,000.00.

---

[2] Parikh's Chapter 13 case was dismissed and his Chapter 7 case went to trial whereafter the Court determined that Parikh had filed in bad faith, and denied his discharge.

4

17. On July 30, 2013, the State Court issued an order denying Debtor's motion and lifted the stay of enforcement of the Judgment (the "July 30 Order", annexed hereto as "Exhibit F").

18. Immediately following the July 30 Order, Creditor resumed his judgment enforcement efforts, serving subpoenas upon the Debtor, and a demand on Debtor's co-counsel (Stephen I. Feder, Esq.) in the State Court Action to release to Creditor monies which had been ordered to be held in his escrow account pending the determination of the Debtor's motion.[3]

19. Debtor's co-counsel refused to release the funds being held in his escrow account.[4]

20. Debtor failed to comply with the judgment enforcement subpoenas served upon him.

21. And, less than a month after the July 30 Order, Debtor filed his "emergency" Petition.

## **DEBTOR'S PETITION WAS FILED IN BAD FAITH**

### DEBTOR FILED HIS PETITION IN RESPONSE TO A SINGLE LARGE JUDGMENT

22. Debtor filed his "emergency" Petition almost immediately after his motion to vacate the Judgment in the State Court Action failed and Creditor began his judgment enforcement efforts. And, such filing was made by Sobers and Sobers Law, who had represented Debtor in the State Court Action. Sobers was warned by letter from Creditor's counsel prior to

---

[3] Pursuant to an Order of the State Court, Debtor was required to place $12,400.00 in escrow with his co-counsel pending a determination of his motion seeking to vacate the Judgment. The $12,400.00 being held in Debtor's co-counsel's escrow account is disclosed in the Petition, as discussed below.

[4] Debtor's co-counsel wrongfully withheld the funds held in his escrow account following the denial of Debtor's motion for more than 3 weeks to allow Debtor to file his Petition, and to keep those funds from going to Creditor.

5

Debtor's filing, that any filing by Debtor under the bankruptcy code would be met with a motion to dismiss for bad faith, and for sanctions against both the Debtor and his counsel ("Exhibit G").

23. Creditor's Judgment, totaling $135,727.34 at the time of the Debtor's filing, represents more than 97% of the total debt disclosed by Debtor in his Petition.

24. The Debtor's filing discloses debts other than the Judgment totaling $13,943.00. However, $10,000.00 of these other debts was for an auto lease which has been reaffirmed by Debtor (Dkt.# 15). These other debts, amounting to $3,943.00, were incurred between 2004 and 2011, and simply were not a factor in Debtor's filing of his emergency Petition, in August 2013. The "emergency" which caused Debtor to file was Creditor's Judgment and his enforcement thereof.

25. There can be no doubt that Debtor filed his Petition solely in response to the Judgment obtained by Creditor and his enforcement thereof.

### DEBTOR FAILED TO MAKE ANY ATTEMPT TO PAY THE JUDGMENT

26. Debtor failed to make even a single payment on the Judgment since its entry in March 2013. Instead, prior to his filing, Debtor forced Creditor to defend against the aforesaid, meritless motion to vacate the Judgment.

27. In addition to failing to make any payment on the Judgment, Debtor and his co-counsel conspired to keep the $12,400.00 being held in the attorney's escrow account from being released to Creditor as required following the State Court's denial of Debtor's motion.

28. Due to the automatic stay imposed by the Debtor's filing, Creditor has been deprived of those funds held in escrow which should have been paid to him at the end of July 2013.

29. There can be no doubt that Debtor has not only failed to make any attempt to pay the Judgment, but that he filed his Petition in order to hinder and impair Creditor from obtaining monies which should have been paid to him – and in an attempt to wrongfully remove this matter from the State Court.

**Debtor Has Favored Insiders**

30. At his 341 meeting, Debtor initially testified that he had listed all of his debts in his filings (Ex. B, pp. 2 – 3).

31. However, when later confronted by Creditor's counsel with the fact that he had borrowed monies from family members, which debts were still owed at the time of his filing, Debtor contradicted his initial testimony and admitted that those debts were still owed and not disclosed in his filings (Ex. B, p. 29).

32. Sobers was well-aware of these debts owed to insiders prior to the filing as it was by her own affirmation in the State Court Action that the State Court and Creditor were informed that Debtor had, "borrowed money from several family members who had to make sacrifices of their own to assist." ("Exhibit H", ¶22).

33. Despite Sobers' actual knowledge of these debts owed to insiders, and the reminder of the existence of these debts to insiders at the 341 meeting, neither the Debtor nor Sobers have seen to their disclosure in the Debtor's filings.

34. Debtor clearly sought to avoid the discharge of his debts owed to insiders while attempting to obtain the discharge of his other debts.

**DEBTOR HAS FAILED TO MAKE A FULL AND CANDID DISCLOSURE**

UNDISCLOSED BUSINESS OWNERSHIP – GARDEN OF HEALTH, INC.

35. Debtor failed to disclose his ownership of a 100% interest in Garden of Health, Inc. in his filings.

36. In 2004, Debtor was the sole owner of Garden of Health, Inc. (Ex. B, pp. 11-12, 17). This is the business into which Bharat had transferred his money, from the sale of his business, home and tax refunds, in an attempt to fraudulently conceal it from Creditor. As testified to at his 341 meeting, substantial sums of money were put into this business by Bharat in late 2004 (Ex. B, pp. 15-18).

37. As Debtor put it in his an affidavit in the State Court Action, his father sold his house, and "the money was used for a new health food store that my father purchased… he put that new business in my name, because vendors would not sell to any business that was associated with his name." ("Exhibit I", ¶¶ 7 & 9) Here, Debtor even admits his knowledge of the fraudulent intent of the Garden of Health, Inc. transactions, albeit with respect to other creditors of his father, when he stated that this was done, "because vendors would not sell to any business that was associated with [my father's] name." (*Id.*, ¶9)

38. As the Debtor testified at his 341 meeting, "I wanted to open my own business so my father gave me some money to open up a business [Garden of Health]" (Ex. B, p. 11, lines 18-20) - Garden of Health, Inc. was the Debtor's business. While the Debtor testified at his meeting that he believed his father had given him only $10,000.00 to fund Garden of Health, Inc. (*Id.*, pp. 11 – 12), but then stated that he did not recall exactly how much he was given (*Id.*, pp. 15 – 16). However, the minimal bank statements Debtor produced in the State Court Action revealed that far more than $10,000.00 was initially given to Debtor, and Bharat testified at the

341 meeting in his Chapter 7 case that he had actually given his son approximately $110,000.00 when Garden of Health was formed ("Exhibit N", p. 18, lines 3 – 6), and later confirmed in such testimony that approximately $153,000.00 was used for his son's (the Debtor's) business (Id., p. 22, lines 17 – 23). In any event, Debtor and Bharat have conceded that Bharat transferred substantial sums of money to Debtor at a time when Creditor had an action pending against Bharat for the unpaid promissory note, and just prior to Creditor's entry of his first judgment against Bharat.

39. Debtor testified that he does not know whether or not Garden of Health, Inc. was ever dissolved (Ex. B, pp. 18-19).

40. In fact, Garden of Health, Inc. was never dissolved by Debtor. It continued to be an active New York State corporation through January 2011, when it was only annulled by proclamation for non-payment of taxes ("Exhibit J"). Accordingly, even though it was annulled in 2011 by the State tax authority, it remains an entity owned in its entirety by Debtor to this day.

41. Despite the facts that Debtor was the sole owner of Garden of Health, Inc., Sobers and Sobers Law were well aware of Debtor's ownership of Garden of Health, Inc. due to their representation of Debtor in the State Court Action, and the reminder of Debtor's ownership interest in this corporation at the 341 meeting, Debtor's ownership of Garden of Health, Inc. has never been disclosed in the Petition and Schedules - neither his present ownership thereof, nor his ownership and officership thereof in the six years preceding the Debtor's filing.

<u>UNDISCLOSED BUSINESS OWNERSHIP – BWELL4EVER AND VEDA MEDICA, LLC</u>

42. At his 341 meeting, Debtor testified that he works for BWELL4EVER, an LLC formed in Delaware (also known as Veda Medica, LLC), and that this business is owned solely by his father and mother (Ex. B; pp. 3-4).

43. However, this testimony is directly contradicted by the Debtor's own affidavit, dated October 10, 2013, filed with this Court the day prior to the 341 meeting (Dkt.# 22), wherein Debtor stated that he is (at least)[5] a minority partner of BWELL4EVER ("Exhibit K", ¶8).

44. The only conclusion that can be drawn is that the Debtor provided knowingly false testimony at his 341 meeting – testimony which Sobers also knew to be false, as it was she who filed the Debtor's affidavit with this Court.

45. The Debtor, Sobers and Sobers Law have failed to ever disclose any ownership interest of the Debtor in BWELL4EVER, LLC or Veda Medica, LLC.

45. And, despite the subsequent submission of his affidavit attesting to his ownership interest in BWELL4EVER, neither Debtor nor Sobers and Sobers Law ever sought to disclose this business ownership interest in Debtor's Petition and Schedules after the initial filing thereof, or to correct Debtor's testimony.

UNDISCLOSED BUSINESS OWNERSHIP – NUTRIFOOD, INC.

46. At his 341 meeting, Debtor testified that he was never an owner or officer of Nutrifood, Inc. (Ex. B, p. 24).

47. However, in June 2008, Debtor filed an affidavit with this Court in his father's Chapter 7 case, in which the Debtor is identified as an officer of Nutrifood, Inc., in response to a 2004 subpoena served upon that company by Creditor in that case ("Exhibit L").[6]

---

[5] As the Debtor has failed to comply with the 2004 Subpoena demanding all documentation of his business interests, by failing to provide any of the corporate records of BWELL4EVER or Veda Medica, LLC, it is impossible to verify what percentage of this business Debtor owns, the value of this business, or what compensation the Debtor receives from it.

[6] The Court should note that Nutrifood, Inc. was held in contempt and sanctioned by this Court due to its failure to comply with Creditor's 2004 subpoena and the Court's orders in

48. Furthermore, Debtor signed an application for a business bank account for Nutrifood, Inc., on which application he is identified as the "Vice President" ("Exhibit M").

49. Finally, Bharat testified at his 341 meeting, in February 2007, that his son, the Debtor, owns a 30% interest in Nutrifood, Inc. ("Exhibit N", p. 28 and p. 38).

50. The only conclusion that can be drawn from this is that the Debtor, once again, provided knowingly false testimony at his 341 meeting with respect to his ownership and officership of Nutrifood, Inc.

51. The Debtor's Petition and Schedules as initially filed failed disclose any ownership interest or position as an officer of Nutrifood, Inc.

52. Again, despite being put on notice of the Debtor's ownership interest in, and position as an officer of, Nutrifood, Inc., neither the Debtor nor Sobers and Sobers Law ever sought to amend the Debtor's filings to disclose this information.

<u>Undisclosed Debts</u>

53. The debts owed to insiders, as addressed above, were never disclosed by Debtor in his Petition and Schedules, despite even his attorneys' actual knowledge of their existence, and Debtor's testimony regarding same at the 341 meeting.

<u>Undisclosed Potential Claims for Recovery of Monies</u>

54. As the Debtor testified at his 341 meeting, his former business partner drained $40,000.00 out of the business bank account in early 2013, and this caused his business to fail (Ex. B, pp. 21-22).

---

Bharat's Chapter 7 case (Case No. 1-06-44412-cec, Dkt.#s 42 and 54). None of the more than $21,575.00 in sanctions has ever been paid by Nutrifood, Inc. and none of the documents demanded have ever been produced.

55. Sobers and Sobers Law were well aware, prior to the filing of the Petition, of the fact that Debtor's former business partner had drained the business bank account of all of its operating capital as it was addressed in Sobers affirmation in the State Court Action (Ex. H, ¶19).

56. And, in addition to Sobers' affirmation, an affidavit of Debtor, dated March 18, 2013, was submitted in the State Court Action attesting to these same facts ("Exhibit O").

56. Despite the actual knowledge of Debtor's former partner's depletion of the Debtor's business bank account, just months before the Petition was filed, the potential claim for breach of fiduciary duty for causing the business to fail and for misappropriation of funds were never disclosed in the Debtor's filings.

57. And, once again, despite the discussion of these claims at the 341 meeting, neither Debtor nor Sobers sought to amend the Petition and Schedules to disclose these claims.

<u>DEBTOR'S ALLEGED SALARY</u>

58. In his Schedules, Debtor alleges a monthly income of just $1000.00 (Ex. A, Schedule I).

59. However, other than a clearly self-serving affidavit (Ex. I), Debtor has failed to produce any documentation by which his alleged salary (amounting to far less than minimum wage) can be independently verified. Debtor has failed to produce any of the accounting and other corporate records for BWELL4EVER or Veda Medica, LLC which would enable such an independent verification.

60. Instead, the very limited bank records produced by the Debtor for BWELL4EVER ("Exhibit P"),[7] revealed that, in September 2013, more than $98,000.00 flowed into and out of this business, while in October 2013, more than $133,000.00 flowed into and out of this business.

61. Debtor's undocumented and unverifiable salary of $1,000 a month is nothing short of absurd, considering his ownership in, and the amount of money flowing through, the business.

FAILURE TO KEEP, MAINTAIN AND PRODUCE DOCUMENTATION

Personal Bank Records

62. Despite the demand by Creditor's 2004 Subpoena (and the Examination Order) for production of six years of bank records and cancelled checks for Debtor's personal bank accounts, Debtor failed to produce even a monthly single bank statement for 2011, 2012 and 2013, or even a single cancelled check.

Personal Tax Returns

63. Despite the demand by Creditor's 2004 Subpoena (and the Examination Order) for production of Debtor's personal federal, state and city income tax returns and all schedules and statements thereto for 2007 through 2012, Debtor failed to produce any tax return documents whatsoever for 2010, 2011 and 2012 – the three years preceding the Debtor's filing.

---

[7] Despite Creditor's demand for six years of bank records and cancelled checks for all of Debtor's businesses, Debtor produced only partial (and redacted) monthly statements from September 2013 and October 2013 for BEWELL4EVER and a monthly statement from October 2013 for Veda Medica, LLC. The documents produced are exactly as they were when provided to Creditor. Sobers was notified by letter from Creditor's counsel that the production of already redacted documents was wholly improper and unacceptable. Despite Creditor's demand for the complete and unredacted documents, Debtor and Sobers have failed to ever produce same.

Business Documentation

64. Despite the demand by Creditor's 2004 Subpoena (and the Examination Order) for production of all documents and records, including, but not limited to, purchase/sale agreements, shareholder agreements, operating agreements, contracts, certificates of incorporation, financial and accounting records and ledgers, filings (other than tax returns) made with any tax authority, stock certificates, stock ledgers, and certificates of dissolution, for all businesses in which the Debtor has had any ownership interest from August 21, 2007 through the present, *Debtor produced just a single certificate of incorporation for Garden of Health, Inc*.

65. Debtor failed to produce a single corporate record or document for, at least, Maximum Health, Inc., Riddhi Siddhi Advanced Nutrition, Inc., BWELL4EVER, Veda Medica, LLC, Nutrifood, Inc., and other than the certificate of incorporation, any other document for Garden of Health, Inc.

Business Tax Returns

66. Despite the demand by Creditor's 2004 Subpoena (and the Examination Order) for production of six year of business tax returns and schedules for all of his businesses, Debtor produced only a 2012 return for Riddhi Siddhi and Maximum Health, Inc. Debtor failed to produce the vast majority of tax returns for his multiple businesses.

Lease

67. Despite the demand by Creditor's 2004 Subpoena (and the Examination Order) for production of documentation of the lease of the Debtor's residence, Debtor failed to produce any documentation.

68. While this may seem somewhat less important then Debtor's failure to produce the other documentation listed above, Debtor claims a total household income of just $24,000.00

a year in his filings (Ex. A, Chapter 7 Statement of Current Monthly Income, line 13), while disclosing no monthly rent expense (Ex. A, Schedule J). Debtor's father disclosed monthly rent in his Chapter 7 Petition of $2,000.00 a month in 2006 (Case No. 1-06-44412-cec, Dkt.# 1, Schedule J).

69. Even assuming that the rent for the Debtor's residence has not increased in the past seven years, $2,000.00 a month in rent covers the entire $24,000.00 a year in household income claimed by the Debtor.

70. The reason for Debtor's failure to produce documentation of the lease for his residence is obvious; there is simply no way for him to justify the figures disclosed in his filings in light of those documents.

<u>DEBTOR MANIPULATED EXPENSES AND INCOME TO DISGUISE FINANCIAL WELL-BEING</u>

71. As set forth above: (i) Debtor's alleged, and wholly undocumented, salary of $1,000 a month from a company he owns (as Creditor believes in its entirety) is absurd; and (ii) Debtor's alleged household income of $24,000 a year is equally ridiculous for a family of four living in Floral Park, New York – without even considering rent expense. Due to Debtor's failure to produce his documentation, it is simply impossible to make an independent verification of Debtor's income and expenses. This is intentional on the part of Debtor, to disguise his financial well-being from the Court and his creditors.

**<u>MISSTATEMENTS AND OMISSIONS IN PETITION AND SCHEDULES</u>**

72. The Debtor's Petition, Schedules and Statements are replete with misstatements and omissions.

73. As set forth above, Debtor's Petition, Schedules and Statements failed disclose:

(i) Debtor's business ownership interests and officerships in, at least: (a) Garden of Health, Inc.; (b) BWELL4EVER; (c) Veda Medica, LLC; and (d) Nutrifood, Inc.;

(ii) the debts owed by Debtor to insiders;

(iii) the potential claims for recovery of $40,000.00 and damages for causing the failure of his business against his former business partner; and

(iv) any rent expense.

74. In addition to the foregoing, Debtor's Petition, Schedules and Statements contain the following misstatements and omitted the following information:

(i) the nature of Debtor's debts is stated to be primarily business, however, the Debtor's debts are clearly and entirely consumer debts;

(ii) Schedule B, item 13 failed to disclose any stock and interests in any incorporated and unincorporated businesses, despite Debtor's ownership in several such entities;

(iii) Schedule B, item 25 and Schedule F failed to disclose a joint lessee with respect to Debtor's lease of a 2010 Honda, despite the fact that the documentation of this lease produced by the Debtor indicates that Mindy Lamantia was the primary lessee on this lease, and that Debtor is a co-lessee ("Exhibit Q");

(iv) Creditor's Judgment is disclosed as a secured claim on Schedule D, when Creditor is clearly an unsecured creditor of Debtor;

(v) Schedule H discloses Bharat Devani as a co-debtor on Creditor's Judgment, however, as can be clearly seen by the Judgment itself, Debtor is the sole responsible party on the Judgment (Ex. D);

(vi) Schedule I fails to disclose the name and address of Debtor's employer and the length of his employment;

(vii) Schedules I and J disclose income and expenses from the operation of a business, but no detailed statement as to this income and expenses is attached thereto as required;

(viii) In addition to no rent being disclosed, Schedule J fails to disclose any expense for utilities, food, and auto lease, all of which Debtor surely has;

(ix) Item 1 of the Statement of Financial Affairs discloses only "$1,000 Partnership", failing to disclose Debtor's income and source(s) for the three years prior to the filing as required;

(x) In Item 3 of the Statement of Financial Affairs, item (b) is checked when disclosure under item (a) was required as Debtor's debts are entirely consumer debts;

(xi) Item 18, as detailed above, failed to disclose Debtor's numerous business interests and officerships;

(xii) Item 21 discloses Mindy Lamantia as a current partner, however, pursuant to the documentation provided by the Debtor in the State Court Action, Ms. Lamantia surrender all of her stock and resigned her position as officer in both of the companies she jointly-owned with Debtor ("Exhibit R"); and

(xiii) the Means-Test Calculation is based upon non-consumer debts, despite the fact that Debtor's debts are entirely consumer debts.

75. The extent of the misstatements and omissions in Debtor's Petition, Schedules and Statements reveals a total disregard for the truth and accuracy of the information contained therein, by the Debtor, Sobers and Sobers Law.

**Creditor's Attorneys' Fees and Costs**

76. To date, Creditor has incurred attorneys' fees and costs in the sum of **$25,497.19** in challenging the Debtor's case. These fees and costs, as detailed in the invoices

annexed hereto ("Exhibit S"),[8] have been reasonably and necessarily incurred by Creditor in this matter. The total amount of fees and costs sought by Creditor by this motion shall include any and all additional fees and costs incurred in replying to any opposition, arguing before the Court, and all other fees and costs incurred until the final resolution of this motion.

## **CONCLUSION**

Debtor's Chapter 7 case was filed in the total absence of good faith as, in addition to a Petition and Schedules and Statements which are replete with misstatements and omissions, Debtor:

(i) filed his emergency Petition immediately after he failed in his efforts to avoid the Judgment of Creditor, in response to that Judgment and Creditor's enforcement efforts;

(ii) failed to make any effort to pay the Judgment, and even conspired with his attorneys to thwart recovery of monies earmarked to be turned over to Creditor, and which would have gone to paying down the Judgment;

(iii) favored insiders by not disclosing their debts;

(iv) failed to make a full and candid disclosure in that Debtor:

    a. failed to disclose his ownership interests in numerous businesses;

    b. provided knowingly false testimony at his 341 meeting;

    c. failed to disclose debts to insiders;

    d. failed to keep, maintain and produce the vast majority of documents with respect to his business transactions and financial situation; and

    e. understated his income and failed to produce documents and records to disguise his financial well-being;

---

[8] These invoices also serve as Creditor's attorney's time records as such invoices are where services rendered are tracked as they are performed – date, description, and time spent providing services are entered in open invoices as such services are performed, until such time as the invoice is closed, totaled and sent to client.

(v) filed a Petition, Schedules and Statements which were replete with knowing misstatements and omission; revealing a total disregard for the truth and accuracy of the information contained therein;

(vi) filed this, the fourth bankruptcy petition with which Creditor has had to contend in his attempts to secure payment for a business which he sold to Debtor's father in 2000; and

(vii) engaged in intentional fraudulent conveyances which form the very basis upon which Creditor obtained his Judgment against Debtor.

The majority of the foregoing was actually known to Sobers and Sobers Law prior to the filing of the Debtor's Petition. Those few items which <u>may</u> not have been actually known to Sobers and Sobers Law, would have easily been discovered had they conducted even the most cursory of investigations of the Debtor. Moreover, Sobers and Sobers Law failed to ever amend the Debtor's filings when reminded, or made explicitly aware, of the Debtor's non-disclosures.

Based upon the foregoing, dismissal of the Debtor's Chapter 7 case with prejudice to future bankruptcy filings for a period of at least three years is warranted, and the imposition of sanctions, in the amount of Creditor's costs and expenses incurred in challenging the case upon Debtor, Sobers and Debtor's Counsel is just and warranted.

**WHERFORE,** it is respectfully requested that an Order be made and entered: (a) dismissing the Debtor's Chapter 7 case for cause pursuant to §707(a) of the Bankruptcy Code and barring the Debtor from making any subsequent filings under the Bankruptcy Code for a period of at least three years; (b) imposing sanctions upon the Debtor pursuant to Rule 9011 of the Bankruptcy Rules and Section 105(a) of the Bankruptcy Code; (c) imposing sanctions upon Sobers and Sobers Law, jointly and severally with Debtor, pursuant to Bankruptcy Rule 9011, Section 105(a) of the Bankruptcy Code, and 28 U.S.C. §1927, and based upon their breach of their duties under §707(b)(4)(C) and §707(b)(4)(D) of the Bankruptcy Code; and (d) granting such other and

further relief as this Court deems just and proper, or in the alternative, for an extension of time to object to the Debtor's discharge.

Dated: Huntington, New York
December 29, 2013

       /s/  John S. Desiderio, Esq.
JOHN S. DESIDERIO (JSD 4835)
Attorney for Creditor John Desiderio, Sr.
99 Powerhouse Road, Suite 205
Roslyn Heights, New York  11577
(718) 757-9477