Vivian Sobers, Esq. (vs7129)
Attorney for Debtor, Viki Devani
11 Broadway, Suite 615
New York, New York 10004
(347) 244-3687

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

                                                   Chapter 7

        VIKI DEVANI,

                                                 Case No.: 13-45106-CEC

                        Debtor.
-----------------------------------------------------------X

## AFFIRMATION OF VIVIAN SOBERS

**VIVIAN SOBERS**, an attorney duly admitted to practice before the Courts of the State of New York, admitted in the Eastern District of New York, and being fully family with the facts and circumstances set forth herein

### Preliminary Statement

1. Creditor is basing his Motion to Dismiss based upon an allegation of bad faith in that the Debtor (1) filed the petition in response to a single judgment; (2) has allegedly favored insiders; and (3) has allegedly failed to make a full and candid disclosure. Debtor in fact, filed the petition to get a "fresh start" after being pursued by Creditor for monies that were never directly owed by him.

### BACKGROUND

2. In 2001, Viki Devani ("Debtor") began experiencing difficult health issues, which was diagnosed as hydrocephalus with a non-cancerous tumor, ultimately causing

1

permanent nerve damage to his leg and arm.

3. Debtor's father Peter Devani ("Devani") met Creditor when he began researching health supplements and vitamins to help his son with this illness. (See Creditor's Exhibit "N" page 33, lines 2-8)

4. On August 11, 2000, the health business was sold by Creditor to Devani and in exchange Devani would provide a small down-payment and assume responsibility of the corporate debts (totaling approximately $75,000.00)

5. In 2003, in an effort to save the failing business, Devani brought in investor, Sunil Parikh, and then subsequently his brother, Pradip Parikh. (See Creditor's Affirmation)

6. By the time, the investors were brought in, the business had been failing and the rent was past due. It was agreed to have the arrears added to sales price of the business. At this time, the debt to creditor's various businesses suppliers had been paid down to $54,000.00. (See Creditor's Affirmation)

7. In June 2004, Devani's failed to make payments on the Note, as a result, Creditor initiated an action for summary judgment in lieu of complaint on the Note and Guaranty. (See Creditor's Affirmation)

8. Creditor was able to obtain multiple judgments and awards of attorneys fees and costs: (See Creditor's Exhibit E")

    a. On October 21, 2004, a judgment was entered in favor of Creditor, and jointly and severally against Devani and his partner, in the amount of $76,143.97 with interest thereon (annexed hereto as "Exhibit F").

    b. On November 1, 2006, additional awards of attorney's fees and costs, an

amended judgment was entered in favor of Creditor, consolidating all the awards under a single, amended judgment (annexed hereto as "Exhibit G").

c. As of November 16, 2006, the total amount of the judgments, against Devani, individually and jointly, in favor of Creditor, together with accrued interest, was $101,289.21. In addition, Creditor requested an additional $72,000.00 in attorney's fees and for a total approximate debt of $173,289.21.

## THE SINGLE JUDGMENT & FAILURE TO MAKE PAYMENT

9. As a result of Debtor's illness and Devani's poor credit with vendors, Devani opened several business in Debtor's name, including, but not limited to, (1) Garden of Health, Inc., (2) Nutrifood, Inc., (3) Veda Medica, LLC d/b/a BWELL4EVER, (4) Maximum Health, Inc., (5) Riddhi Siddhi, Inc., and upon information and belief, (6) Riddhi Siddhi Advanced Nutrition, Inc.

10. Devani due to his poor credit, Devani also used Debtor's bank accounts for his own use.

11. On or about 2004 Devani sold the family home to prevent foreclosure. (See Plaintiff's Affidavit as Exhibit "A")

12. The family home was sold for approximately $450,000.00 after paying off the mortgage Devani was left with approximately $85,000.00. (See Settlement Statement as Creditor's Exhibit " " )

13. Devani reinvested the proceeds of the sale into a new business for his son, the Debtor, Garden of Health, Inc., the business was run by Devani. (See Creditor's Exhibit "D")

14. After conducting discovery depositions of Devani, Creditor instituted an action

alleging multiple fraudulent conveyances from Devani to Debtor.

15. Creditor obtained attempted to obtain a default judgment but was intervened by Debtor's counsel and ultimately the matter was settled without ever reaching the merits of the case. (See Settlement Stipulation annexed hereto as Exhibit "B")

16. Debtor vigorously denied the allegations in his answer and responding papers, he ultimately settled under pressure and lack of financial resources for the fight that he knew was going to be required.

17. Throughout Debtor maintained he did not commit fraud nor did he have intent to commit fraud.

18. Debtor was not very aware of the different businesses that his father had opened, a fact which Creditor knew.

19. Debtor was a college student with administrative assistance experience.

20. On August 30, 2010 a stipulation of settlement was signed which required the Debtor to pay $25,000.00 overall with $1,000.00 provided in Court. Debtor was then obligated to continue monthly payments of $400.00 until the $25,000.00 amount was satisfied. (See annexed hereto as Exhibit "B")

21. He then made twenty-nine payments of the thirty-one payments, over two and half years, as required under the terms of that contract.

22. Unfortunately, as Debtor was about to make his final payment, his business partner diluted the corporate accounts in the amount of $40,000.00 as a result, the Debtor defaulted under the terms of the Stipulation in not being able to make both the $400.00 payment, and the balloon payment in the amount of $12,400.00 due on March of 2013.

23. While Debtor's counsel at the time contacted Creditor to advise him of the situation, Creditor chose to seek the entry of a Default Judgment against Debtor.

24. Before the hearing on the motion, the Debtor was able to obtain the funds from family and friends for the final payment.

25. However, when the Debtor presented himself to Court with the final payment, the Creditor refused to accept the funds and instead demanded the instant judgment totaling over $130,000.00 be entered.

26. The $12,400 is now being held in escrow by plaintiff's prior counsel in the underlying state court action.

27. After various motions were filed by both myself and my co-counsel Stephen Feder, Esq. asking the Court to reform the Stipulation to force Creditor to take the final payment in full satisfaction.

## Debtor Did not Favor Insiders

28. Debtor belongs to a very close family.

29. Debtor has borrowed money from his family before, and it was generally understood that the monies were not to be returned.

30. No promissory notes were signed by Debtor.

31. Debtor was not attempting to avoid the discharge of some debts over others.

32. Creditor has not been prejudiced by not listing debtor's family as creditors.

## DEBTOR MADE FULL AND CANDID DISCLOSURE

33. He has no knowledge his father opened all these businesses in his name but his role was minor he didn't keep track of all the companies that were being opened

34. Creditor is describing a sophisticated mastermind of fraud when the facts really show

someone who has no business acumen who was placed as officers of companies when he shouldn't.

**UNDISCLOSED BUSINESS OWNERSHIP GARDEN OF HEALTH**

35. Devani used the proceeds of the sale of his home to open Garden of Health, Inc. ("GOH") in Debtor's name. (See Creditor's Exhibit "N" Page 22 lines 12-25)

36. Devani opened GOH to benefit both Debtor and to circumvent his bad credit with vendors. (See Creditor's Exhibit "N" Page 23 lines 2-7)

37. GOH was solely operated by Devani as he was the one with business experience. (See Creditor's Exhibit "N" Page 23 lines 8-10)

38. Devani also used the Debtor and his daughter's bank accounts to "deposit and pay checks and make disbursements". (See Creditor's Exhibit "N" Page 23 lines 15-25; Page 24 lines 15-25; Page 25 lines 1-12)

39. Garden of Health failed in approximately one year after its inception in 2004.

40. Omitting Garden of Health, Inc. was mistake left out because the company has not assets and hasn't been used as a corporation since approximately 2005, a fact which creditor was aware of as he received bank statements in previous litigation for GOH. (See GOH 2004-2005 bank statements provided to Creditor annexed hereto as Exhibit "C")

41. Omitting Garden of Health, Inc. caused no prejudice to the Creditor as he was well aware of the status of Garden of Health since its inception, furthermore, there are no assets that could be discovered to administer the estate. (See Exhibit "C")

42. Furthermore, the records for GOH had been damaged several years ago in a flood in Devani's home, a fact which creditor was well aware of. (See Debtor's Affidavit, Exhibit "A")

43. It was an innocent mistake that is understandable considering the amount of corporations and bank accounts opened in his name by Devani.

## UNDISCLOSED BUSINESS OWNERSHIP
## BWELL4EVER AND VEDA MEDICA, LLC

44. Veda Medical, LLC, d/b/a BWELL4EVER was incorporated again in Debtor's name by Devani in late 2012, but was utilized as a corporation until March of 2013.

45. Debtor's inadvertently failed to mention the source of his income in his original schedules.

46. However, debtor disclosed the source of his income in subsequent documentation to both the Trustee and the Creditor. (See letter to Trustee annexed hereto as Exhibit "B")

47. Debtor's inadvertence did not have an effect in the potential distribution of the estate as the value of debtor's estate did not change in any way by the inadvertence.

48. As such, Creditor cannot claim to be prejudiced by the omission.

## UNDISCLOSED BUSINESS OWNERSHIP NUTRIFOOD INC.

49. Devani opened Nutrifood Inc. with Debtor an a friend as the owners (See Creditor's Exhibit "N" Page 28 lines 1-10)

50. Devani operated Nutrifood, Inc. "as if it was [his] own." (See Creditor's Exhibit "N" Page 28 lines 11-20)

51. Debtor's role in Nutrifood consisted of spending time at the company "in his free

time he would come and help me out..." (See Creditor's Exhibit "N" Page 29 lines 14-21)

52. Debtor's role did not involve keeping the corporate books, keeping inventory, or the accounting for the corporation, despite the ownership interest imputed upon him by Devani.

## UNDISCLOSED DEBTS

53. Debtor did not disclose monies owed to family members as there was no expectation of repayment.

54. Debtor belongs to a close-knit family that help each other in times of great need.

## UNDISCLOSED POTENTIAL CLAIMS FOR RECOVERY OF MONIES

55. On or about 2006 Devani met Mindy Lamantia ("Lamantia") while working in Northport.

56. Devani and Lamantia made an agreement to open another e-health store whereby she would make an initial investment of $25,000.00 in exchange for 15% shares in business, the corporation was named Riddhi Siddhi, Inc., the company also conducted business online as Health-E Time.com. (See Debtor's Affidavit, annexed hereto as Exhibit "A")

57. Lamantia also came on board to handle all of the books and administrative matters of the businesses as debtor had no experience in such matters. (See Debtor's Affidavit, annexed hereto as Exhibit "A")

58. Devani subsequently requested additional investment from Lamantia to purchase more inventory and invest in research and development. Lamantia agreed to invest an additional $25,000.00 for another 15% interest in the venture. (See Debtor's

Affidavit, annexed hereto as Exhibit "A")

59. Beyond the money she invested in the business she also gave both the Debtor and Devani personal monies and paid monies into the business above and beyond what was required, she also co-signed for debtor's vehicle. (See Debtor's Affidavit, annexed hereto as Exhibit "A" and bank records from Lamantia annexed hereto as Exhibit "E")

60. At this time, Mindy Lamantia opened Maximum Health, Inc. in Nevada, to shield herself from personal liability, myself and my father held interest in Maximum Health, Inc., (See Creditor's Exhibit "K" for Debtor's Affidavit of Income)

61. Unfortunately, the businesses, lost money and were not successful either.

62. In the end of 2012, Veda Medica was opened with Devani so that they could, in the near future, develop a different brand of vitamins on their own without any partners. (See Debtor's Affidavit, annexed hereto as Exhibit "A")

63. However, due to the handling of the other business Debtor did not start working under Veda Medica until the beginning of 2013.

## DEBTORS ALLEGED SALARY

64. As previously mentioned, Debtor belongs to a very close-knit family where it is not uncommon to live at home with parents.

65. Debtor's health problems also made it prudent to live with his family.

66. Debtor is not in a financial position to afford his own rent as he is only withdrawing $1,000.00 per month from the business. (See Debtor's Affidavit, annexed hereto as Exhibit "A")

## FAILURE TO KEEP MAINTAIN AND PRODUCE DOCUMENTATION PERSONAL TAX RETURNS; BUSINESS

## DOCUMENTATION ; BUSINESS TAX RETURNS

67. On November 8, 2013, this Honorable Court signed an Order authorizing the Examination of Devani and Lamantia Pursuant to Bankruptcy Rule 2004 (See Creditor's Exhibit "C")

68. On or about October 7, 2013, Debtor provided Creditor with responses to the subpoena. (See affidavit, taxes and creditor reports annexed hereto as Exhibit "D")

69. At this time, Debtor was not in possession of any further documentation responsive to Creditor's demands.

70. However, upon further inspection and a request to Debtor's prior counsel, Debtor was able to obtain further documents responsive to Creditor's subpoenas. (See response annexed hereto as Exhibit "E").

71. Debtor provided any and all available documentation. (See voluminous responses annexed hereto as Exhibit "E").

72. As repeatedly mentioned, despite Debtor's interest in the various corporations, his role in these companies were limited, it was in fact Devani that ran the entities.

## DEBTOR MANIPULATED EXPENSES AND INCOME
## TO DISGUISE FINANCIAL WELL-BEING

73. This is ludicrous creditor and his counsel are well aware that _none_ of the businesses that the Debtor or Devani have attempted since 2001 have been successful. The various businesses would make modest profits and then sales would decline and the company would be defunct within two years.

74. Creditor points to the lack of rent as an idicia of untruthfulness when the truth is the Debtor lives with both his parents who takes care of all of the household expenses.

75. Creditor has had over a decade of history with this family and is well aware of their

financial acumen and financial standing.

76. Creditor by relentlessly pursuing both father and son has made it virtually impossible for them to ever have a hope of satisfying the judgments against them.

77. Debtor is seeking a fresh start from a situation that originally had nothing to do with him.

## MISTATEMENTS AND OMISSIONS IN PETITION AND SCHEDULES CREDITORS ATTORNEYS FEES AND COSTS

78. As previously stated, the omission in the petition and schedules of GOH and Nutrifood were due to the belief that the no-asset entities were not operating and therefore had no bearing on the administration of the estate

79. In the case of Veda Medica, the Debtor inadvertently missed it on his petition and schedules, however, provided the information to the trustee and the creditor or as in the case with Veda Medica were new entities that

80. Creditor mentioned warning counsel's office

81. Debtor has the right to a fresh start just like any other debtor especially one standing in the shoes of the debtor in this situation and being threatened with the instant motion

## CREDITOR'S ATTORNEYS' FEES AND COSTS

82. Creditor and his attorney have taken advantage of creditors rights to great success.

83. What began as a judgment for less than $100,000.00 has almost quintupled by creditors account.

84. Now, Creditor comes before this Court asking the Court to grant sanctions and attorneys fees that are only reserved for the most egregious of conduct, not present

here.

85. Not only is creditor alleging that debtor does not have a right to a fresh start, but that he should also pay for creditors attorney's fees for having the audacity to not heed his "warning".

86. Creditor and his attorney have been well aware of the lack of involvement of the Debtor in the various transactions as well as his lack of business acumen, yet, creditor insisted not only in challenging the discharge, but in leveling the very serious accusations of bad faith against the Debtor.

87. Furthermore, upon closer inspection, the invoice presented was not reasonably and necessarily incurred by Creditor in this matter.

88. Creditor's attorneys' invoice details almost five hours of preparation for creditors meeting when he only showed up to one of the almost five meetings that have been scheduled. Creditor's attorney also claims a review of court orders for the 2004 examination, which he himself drafted and proposed to the Court for signature.

89. Creditor's attorney also claims an extra five hours for research on the instant motion when he has filed an almost identical motion in two other cases including In re Parikh and In re Bharat Devani making this claim of time and expenses dubious at best.

90. Creditor's attorney also claims an additional five hours in drafting and further research, which again is duplicative of previous efforts in other matters.

91. As such, any attempt by Creditor to seek reimbursement for fees or costs should be denied in its entirety.

WHEREFORE, it is respectfully requested that Creditor and his counsel's Motion to

Dismiss and for Sanctions be denied in its entirety and granting such other and further relief as this Court deems just and proper.

Dated:    New York, New York
             January 29, 2014