UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re:<br><br>VIKI DEVANI CH: 7<br><br>[45] MOTION TO SEAL DOCUMENT(S) (RE: RELATED DOCUMENT(S) [44] MOTION TO WITHDRAW AS ATTORNEY) | ) | 1-13-45106-cec |
| In re:<br><br>VIKI DEVANI CH: 7<br><br>[44] MOTION TO WITHDRAW AS ATTORNEY | ) | 1-13-45106-cec |
| In re:<br><br>VIKI DEVANI CH: 7<br><br>DESIDERIO v. DEVANI<br><br>[7] CROSS MOTION TO COMPEL AND OPPOSITION TO MOTION TO WITHDRAW AND MOTION TO SEAL | ) | 1-13-45106-cec<br><br>1-14-01025-cec |

U.S. Bankruptcy Court
271-C Cadman Plaza East
Brooklyn, NY 11201-1800

June 5, 2014
3:06 p.m.

BEFORE THE HONORABLE CARLA E. CRAIG, Judge

APPEARANCES:

For the Debtor: Vivian Sobers
SOBERS LAW, PLLC
11 Broadway, Suite 615
New York, NY 10004

APPEARANCES: (Continued)

| | |
|---|---|
| Also Present: | Viki Devani, Debtor<br>Mr. Devani, Debtor's Father |
| On behalf of Plaintiff and Cross-Movant: | John Desiderio<br>D & F ASSOCIATES LLP<br>18 Bedford Avenue<br>Garden City Park, NY 11040 |

Proceedings recorded by electronic sound technician, Juliet R. Lecky; transcript produced by AVTranz.

THE CLERK: Calling the Viki Devani case, number 32, 33, and 34 on the calendar.

Appearances, please.

MS. SOBERS: Vivian Sobers of Sobers Law on behalf of Viki Devani.

MR. DESIDERIO: John Desiderio on behalf of Plaintiff and Cross-Movant, John Desiderio, Sr.

THE CLERK: Sir, state your name for the record, please.

THE DEBTOR: Good morning, Your Honor. My name is Viki Devani.

THE COURT: Okay. And who else is in the courtroom, please?

MR. DEVANI: I'm his father --

THE COURT: Sorry?

MR. DEVANI: I'm his father.

THE COURT: All right. Let's take the application -- counsel's application to withdraw first. So I'm going to ask Mr. Devani, Viki Devani, do you still want to continue with this attorney, or do you want to switch to a different attorney?

THE DEBTOR: Well, presently --

MR. DEVANI: You don't want --

THE COURT: Excuse me. Who --

THE DEBTOR: One second.

THE COURT: No, I -- who -- why are you speaking?

MR. DEVANI: Oh, I'm sorry.

THE COURT: Please be seated. And don't say anything.

Go ahead.

THE DEBTOR: Okay. Well, presently, we don't have an issue with it, but my attorney doesn't want to continue because she feels that she can't do anything for me.

THE COURT: Okay. So do you want to continue with her, or do you want to find somebody else to represent you?

THE DEBTOR: I guess in this situation where she doesn't want to -- she doesn't feel comfortable representing me, I should find someone else because that's why it wouldn't benefit me if she represents me and she doesn't want to be there.

THE COURT: Okay. So you have no objection to her withdrawing? Is that correct?

THE DEBTOR: That's correct.

THE COURT: Okay. Are you going to find another attorney?

THE DEBTOR: I will need time for that because of the extent that this case spans, and the voluminous documents that are related to this case. Every lawyer that I've spoken to thus far is asking for arms and legs and, you know, my reason for filing bankruptcy is because I don't have funds.

THE COURT: Okay. I am not going to be able to give you a lot of time, so you have to bear that in mind and decide -- and if you don't come up with a lawyer, then you're going to have to represent yourself. So think about that before you consent to her leaving.

THE DEBTOR: Would it be possible for me to hire co-counselor?

THE COURT: Co- -- what -- hire co-counsel?

THE DEBTOR: Correct.

THE COURT: What do you mean?

THE DEBTOR: Because obviously she doesn't want to represent me, so I don't feel that her representing me would be beneficial to me as well.

THE COURT: What I'm saying -- okay. You can hire another lawyer, for sure.

THE DEBTOR: Okay. Uh-huh.

THE COURT: But if you can't find somebody else --

THE DEBTOR: Okay.

THE COURT: -- then this case is still going to go on, and you won't have a lawyer at that point, and you'll be represented -- you won't be represented by her because I -- if I agree to permit her to withdraw, then she's not your lawyer anymore.

THE DEBTOR: Okay. I understand.

THE COURT: And then you -- and the case will still

be here and you'll still have to go forward and you'll have to handle this yourself.

THE DEBTOR: Obviously, without any legal acumen, obviously I can't do that, so --

THE COURT: Well, that's what I'm saying.

THE DEBTOR: Yeah. Obviously, I need some time because, like, you know, like I said --

THE COURT: Of course, this case, this motion was filed about a month ago; wasn't it?

THE DEBTOR: Yes.

THE COURT: So you've had some time.

THE DEBTOR: I have been speaking to lawyers, but, you know, I -- see -- I mean, that kind of concerns me a bit. I don't understand the process here because, you know, my filing for bankruptcy is because that -- because to show that I do not have funds, yet I'm put in a situation where I have to find funds to --

THE COURT: Well, see the problem is that this creditor --

THE DEBTOR: Right.

THE COURT: -- takes the position that your bankruptcy filing wasn't in good faith, and that you shouldn't get a discharge.

THE DEBTOR: Well, my answer to that is that, you know, initially when this whole issue transpired, the credit --

the Plaintiff's attorney sued me and -- because I did not have funds at that point in time, my lawyer suggested -- not her, different lawyer -- suggested that we settle. And, you know, because we didn't have funds to go into trial.

So we decided to settle. And we worked out an agreement, a payment plan, whereby we, I think, gave some type of lump sum payment and then we paid over two years a monthly installment, and then at the end of two years, there was a lump sum -- another lump sum due. But due to a financial obstacle that came in the way, we were all, you know, out of funds, and so we asked the Court to grant us an extra period of time to come up with those funds, which the Court did, but the Plaintiff's attorney disagreed to take that money once we were able to obtain it.

So ultimately, the Plaintiff's attorney just wants to collect the judgment amount.

THE COURT: Right. But -- I understand that, but -- that you're -- I mean, I remember reading this in the papers, but the point of the matter is that you're here in Bankruptcy Court --

THE DEBTOR: Uh-huh.

THE COURT: -- and you're going to have to deal with Mr. Desiderio, with an attorney or without an attorney. And that's -- there's no way around that.

THE DEBTOR: I agree, but when you say you'll be able

to allocate me some time, how much time?

THE COURT: Not very much time. Maybe 30 days.

If you were willing to work with and cooperate with counsel here, she might be prepared to represent you.

THE DEBTOR: In all honesty, I mean, I'm willing to work with Ms. Sobers here. It's just that, you know, she felt that, you know, she was having poor relations with my father who is obviously ill --

THE COURT: Okay. Maybe your father should stay out of this.

THE DEBTOR: No, I mean, because, like, it all emanates from his situation, ultimately, this case, because I -- you know, ultimately, the Plaintiff's attorney roped me in as well, so it ultimately emanates from my father's side. So obviously he has more insight. I was still a youngster when all this happened. Now, I mean, I was an adult, but still a college-going student when all this started. So, you know, my ultimate aim was just to help out my father, so I wasn't exactly a business connoisseur by all -- by any means. So I was just trying to help my father. And so --

THE COURT: Uh-huh.

THE DEBTOR: -- you know, now I'm in this situation that I'm -- I mean, ultimately I'm kind of confused as to what to do, how to proceed.

THE COURT: Uh-huh.

THE DEBTOR: Because, you know, I mean, I don't have any issue with her, but presently, what's been going on is that Ms. Sobers has been persistent with settling, but the terms are completely disagreeable to myself and to my family. I mean, we -- I don't have funds right now. I'm still 30 years old. I don't have funds like that.

THE COURT: Well, right.

THE DEBTOR: And so she's been very adamant to settle under disagreeable terms, and I feel that, you know, if she's truly representing me, how can she be so willing for me to accept those terms?

THE COURT: Uh-huh.

THE DEBTOR: So, you know. So, you know, I understand your position. This case must proceed, but --

THE COURT: I mean, ultimately --

THE DEBTOR: Uh-huh.

THE COURT: -- what may happen is you may not get a discharge. That's the -- that is what could happen at the end of the day.

THE DEBTOR: Yeah.

THE COURT: In which case, you're just -- you're still liable for the amounts that are owed.

THE DEBTOR: I agree, but, you know, that's the point. That's the reason why I'm in bankruptcy, because I shouldn't be liable.

THE COURT: Well, but --

THE DEBTOR: I don't have those funds.

THE COURT: -- but it may turn out that -- it may, at the end of the day, be determined that you're not entitled to a discharge. That's there for the contention that this creditor makes. And if I agree with that, and then you won't receive a discharge.

THE DEBTOR: Of course. Of course. But I feel that we have enough, you know, basis for us to win this bankruptcy, because ultimately I did not do anything wrong here. I do not have funds. So I feel that if I find the right attorney --

THE COURT: The fact that a person doesn't have funds doesn't mean that they, you know -- that's not the end of the day.

THE DEBTOR: That -- I take that back. Ultimately, you know, without that being said, you know, I also am not responsible the way he's suggesting is that I was completely, you know, responsible for what has happened here. I -- you know, I was very naïve when all this happened. I was just trying to help my father out as any son would. And so, you know, he's trying to suggest that I was this mastermind, trying to be evasive of every detail, and which is not the case, but -- so if I -- I feel that if I find the right attorney to understand my situation, then I have a chance of succeeding

here.

THE COURT: All right.

Well, Ms. Sobers, is there any circumstance under which you would be able to continue this? Will there be any change in the way that the Debtor is approaching this case that would change your views?

MS. SOBERS: Unfortunately not, Your Honor. I mean --

THE COURT: Why is that?

MS. SOBERS: Some of what he's describing as far as that he wasn't at fault has been part of the contentious and hostile environment that we've had, because I've broken down the law to him. I've explained to him what he's facing. As far as the settlement negotiations, I went back and forth with creditor for several times.

THE COURT: Yeah. Well, I -- you know, don't get into -- before we go any further, I'm just going to say, don't -- please don't talk about the substance of settlement negotiations.

MS. SOBERS: I apologize, Your Honor.

THE COURT: And please don't say anything that would be -- that gets into an attorney-client privilege area.

MS. SOBERS: Correct. And part of my problem here is that I can't reveal a lot of it, but I'm basing a lot of my arguments on communications that I don't want to reveal here,

and that I didn't reveal on the papers, but I just feel that the situation is one where I must withdraw.

THE COURT: And why must you withdraw?

MS. SOBERS: I'm basing that on statements revealed to me by the Debtor. I can reveal them to Your Honor in camera if that would be an alternative, but I don't feel comfortable saying it on the record. I still have a duty to my client until I'm --

THE COURT: Uh-huh. I agree.

MS. SOBERS: -- formally withdrawn.

THE COURT: I agree that you do.

All right. Well, I'm extremely reluctant to keep a lawyer in the case under circumstances like that.

THE DEBTOR: Your Honor, may I say something?

THE COURT: Yes, of course.

THE DEBTOR: Okay. You know, ultimately, you know, Ms. Sobers also suggesting that, you know, there's different facts from what she ultimately realized and from what I suggested to her when we were discussing this case. So, you know, she feels that there's a mismatch in what I've revealed to her and what she's found out. But she has to understand that, you know, this case spans ten years. I do not have photographic memory. I cannot remember every single detail. And you -- and she also has to understand that when this all started, I was very naïve; I was still a college student just

trying to help my father out. My focus wasn't on business matters whatsoever. Like I said, I was just trying to help my father out.

So, you know, I -- you know, whoever it is, I cannot remember all these details. I mean, I understand I have a responsibility now. I'm willing to go through all of that information now. But if -- just standing here, if I'm supposed to come up with these facts, remember things from ten years ago, I cannot do that. If there are people that can, that's great. But I cannot.

I mean, ultimately -- so, you know, if she feels that way --

MS. SOBERS: That's --

THE DEBTOR: -- you know, she has had access to the entire 500-, 600-page paperwork that deals with this case, with all the facts in those pages. So I haven't gone through all those pages. But she's had access to that, which I made from my previous attorney. He provided all those documents to her.

So if she feels that I misdirected her in any way, I mean, it's also her responsibility to do the homework and dig out the details and tell me what's -- what I'm missing because, like I said, I cannot remember everything.

MS. SOBERS: I don't disagree that a simple lack of memory would not be enough for me to withdraw, but it's not a

simple lack of memory. It's specific statements that were provided by him that the immediate response was I must withdraw. That was my initial gut reaction when I heard these statements, and it's not what he's talking about. And, again, I can provide them to you in camera if you would allow it or would like to, but it's not simple matter of he has a bad memory.

THE COURT: Okay. All right. I'm not going to take anything in camera, but I'll hear from -- so I'm inclined to say that it probably is for the best that you find another attorney. And you seem to feel that way as well.

THE DEBTOR: I mean, I have no objections working with her, but, you know, because of this situation now, I mean, ultimately I am in that situation, but -- see, I -- I am naïve because legalities are everything. So I just don't understand the reason for filing bankruptcy if people are, you know, suggesting that they don't have funds, yet they should come up with funds from friends or family.

THE COURT: But not everybody gets a discharge in bankruptcy. You can have no money, but if you have -- if there -- if you have been engaged in various types of conduct that are specified in the Code, you still don't get a discharge in bankruptcy, even if you have no money. The bankruptcy -- the bankruptcy discharge is available only to the honest but unfortunate debtor, and if -- and there are a number of things

that you can do to forfeit a discharge, including not keeping adequate records, financial records, that can -- even if you didn't do that with any malicious intent --

THE DEBTOR: Uh-huh.

THE COURT: -- if you don't have appropriate financial records, you may not be entitled to a discharge. So the fact that you don't have money does not automatically lead to the conclusion you get a discharge in bankruptcy.

THE DEBTOR: Okay. I understand that.

Well, also, what about my trying to attain an attorney, or retain an attorney for this situation? That also requires money, but filing a bankruptcy, you do so under the assumption that you don't have money, yet you're supposed to cough up the money to hire an attorney. So I --

THE COURT: Well, there are --

THE DEBTOR: -- I don't understand how that works.

THE COURT: -- do you -- are -- you know, I don't know what your financial situation is, but obviously you found the money to pay this attorney --

THE DEBTOR: Yeah.

THE COURT: -- and think she mentioned that she was willing to refund at least some portion of that money to you.

MS. SOBERS: That was actually on the unrelated action of the father. He had paid me $500 to help in the State

action --

THE COURT: Uh-huh.

MS. SOBERS: -- when Desiderio was enforcing a separate judgment --

THE COURT: Uh-huh.

MS. SOBERS: -- and I offered to do the deposition and response to subpoena, but when the relationship broke down, I offered to return some of the funds because I wasn't going to --

THE COURT: So that's got nothing to do with this --

MS. SOBERS: No.

THE COURT: -- bankruptcy case?

MS. SOBERS: No.

THE COURT: All right.

THE DEBTOR: But I also feel that I should receive some of that money that was paid to her because I was assuming that she would see the bankruptcy through, and this is just halfway. And so ultimately, if she would have reimbursed me half of that money, I could use those funds to pay another attorney if she is so adamant to leave.

MS. SOBERS: Your Honor, normally, I wouldn't mind, but the amount of hours and time and effort that I've spent on this matter from the beginning. I mean, I was paid a total of $3,000, which, you know, including the adversary proceeding I have answered, and I'm here today with my own motion. I've

expended a great deal of time on this matter. If this was in the beginning, then I would understand. And I would, you know, give some of the money back. I already offered on the State action because I knew I hadn't earned it, but in this matter, I've earned it above and beyond.

THE COURT: Okay.

MS. SOBERS: And I just cannot in good conscience return funds.

THE COURT: All right.

MR. DESIDERIO: Your Honor, may I be heard?

THE COURT: Not yet.

THE DEBTOR: May I continue?

THE COURT: Yes.

THE DEBTOR: I agree that she did do work. Obviously, I mean, I wasn't displeased with her conduct all throughout, just, you know, lately. But, you know, she did do work. She did do the work, but ultimately, you know, I'm not financially stable enough so that I can afford, you know, the other bankruptcy lawyers that are out there. I mean, right now, because of where the case is right now, there all asking for arms and legs.

So, you know, I don't know what I'm going to do there. I'm going to have to try to convince them, those lawyers, to maybe take installments or what-have-you. But that would help to a certain extent, getting some of the money back.

If not all, some would help.

THE COURT: All right. Do you think you could see your way clear if you refund him $500?

MS. SOBERS: Okay.

THE COURT: Okay. All right.

I'll hear from Mr. Desiderio.

MR. DESIDERIO: Obviously, an objection from the creditors is obvious here. Ms. Sobers conducted the investigation of the Debtor, whatever investigation that might have been. She filed a petition of schedules. She attended the 341 meeting. She filed the answers. She's responded to interrogatories. We were set for depositions until this motion came up. And the original basis for our motion to dismiss was Ms. Sober's filing of the petition in bad faith. She's going to be a necessary element of any trial on that motion, which is pending for schedule --

THE COURT: Well, I'm going to -- since I have considerable leeway in how I've tried this case, we are going to be trying the 727 action first. And if I determine that the Debtor doesn't get a discharge, then the motion to dismiss will not be addressed.

MR. DESIDERIO: Okay. Well, it --

THE COURT: So that, I think -- that, I think, would obviate the need for Ms. Sober's participation, at least in -- to that extent.

MR. DESIDERIO: Well, and there's the sanctions aspect of the motion as well.

THE COURT: Well, that's true, and I'll have to consider that afterwards. But that's considerably down the road.

MR. DESIDERIO: Okay.

THE COURT: But that doesn't mean that that you -- the fact that you've made a sanctions motion against the -- against her, whatever the merits of that may or may not be, does not strike me as a reason why she has to stay in the case and continue to represent the Debtor.

MR. DESIDERIO: Well, it basically -- and then the undue delay. I mean, with -- Ms. Sobers -- two months ago, Ms. Sobers requested a two-month adjournment of this matter to depose my client, to start a --

THE COURT: Well, let us -- what's the tearing hurry here for you?

MR. DESIDERIO: I'm sorry?

THE COURT: Is there some external -- what's the -- is there some external fact that is other than your desire to get to judgment?

MR. DESIDERIO: To get this moving. It's delayed --

THE COURT: Oh. Well, I'm sorry but I don't think that that is -- your wish to move this case is not going to be enough to -- for me to deny this motion.

MR. DESIDERIO: Fair enough. Okay. Said my part.

THE COURT: Okay.

All right. So I will permit you to withdraw from this case. You must refund the Debtor $500.

You're going to have to get yourself another lawyer, and you're going to have to do it quickly.

THE DEBTOR: Okay. How much time do I have, Your Honor?

THE COURT: I would give you a period of 30 days. In fact, what I'll do, is put this on for a conference in July, when you'll -- but I want you to come back at that conference with an attorney.

MS. SOBERS: And, Your Honor, can I have the same thing, at least to refund the 500? Or is that -- what timeframe would the Court prefer?

THE COURT: How much -- do you need 30 days to do that?

MS. SOBERS: Two weeks.

THE COURT: Okay. Two weeks, if you can do that.

MS. SOBERS: Thanks. Sure.

THE COURT: In two weeks.

MS. SOBERS: Thank you, Your Honor.

THE COURT: Let's do it before that. The 17th?

I'll put this on for a conference on the 17th. And I want you to appear with counsel at that conference.

THE DEBTOR: On July 17th? All right.

And, Your Honor, may I, you know, just bring up an issue regarding the Plaintiff's attorney at the moment, or is --

THE COURT: Let me just -- before we leave the topic of attorneys -- well, you know what? Why don't you make an effort and see if you can find somebody to -- that will represent you.

THE DEBTOR: I will do that, but, you know -- and that being said, you know, I've spoken to several trustees, not a lawyer, as a trustee that can represent me.

THE COURT: Trustees?

THE DEBTOR: Yeah, trustees. You know, lawyers that are trustees?

THE COURT: I see. Uh-huh. Yeah.

THE DEBTOR: Yeah. And I've spoken to several of them.

THE COURT: Yeah.

THE DEBTOR: And, you know, even they are right now, you know, just starting to look at the case where it stands right now, you know, they're saying, yes, I'm -- we can definitely do this, help you out here. We definitely feel that, you know, you have a case. But, like I said, you know, they're asking for, you know, a -- just an egregious amount of money. And so, you know, I'm still trying to find an attorney

that's going to be willing to work with us in our financial situation. And, you know, it's just not very easy. You know, there's several good attorneys out there that I've spoken to, but I guess that they're all asking for arms and legs, and, you know, we're not in the situation where we can do that.

And so, you know, my -- ultimately, I'm left in a situation where I have to find someone that's willing to work on an installment plan or, you know, something of that nature because, you know, ultimately we cannot go forward.

For example, one attorney is asking for 15,000 to come in right now. That's -- I mean, if I had that, I can help Mr. Plaintiff out here. But, you know, I'm not in that situation. So ultimately, you know, my situation has been of that nature where, you know, I do not have enough funds to be able to hire a lawyer of that caliber, essentially.

So, you know, I'm struggling to find an attorney now. I understand her situation. She doesn't feel that she can represent me successfully. And that's fine. She has that right. But, you know, she's done the work and this has been -- she's been with us for three or four months now looking at this case. So a new attorney would also say that they need time to look into this and delve into this.

THE COURT: I can -- I could consider whether this would be an appropriate case for me to see about the

possibility of appointing pro bono counsel. I don't know whether it is or whether you would qualify financially for that.

THE DEBTOR: Well, I mean -- Your Honor, I'm just going to try my best to continue trying to find an attorney. And, you know, if I am unsuccessful, then I guess I will have to follow-up with you on that. But, you know.

THE COURT: Okay.

THE DEBTOR: And ultimately --

THE COURT: All right. Fair enough.

THE DEBTOR: And what else can I do? I mean, I just have to continue searching.

THE COURT: Okay. So I'll put this down for a conference on July 10th. How's that?

THE CLERK: At 3.

MR. DESIDERIO: July 10th, was that?

THE COURT: Yeah.

MR. DESIDERIO: Okay.

THE COURT: Let's do July 10th at -- what time?

THE CLERK: Three.

THE COURT: At 3:00. And if you have a lawyer at that time, bring the lawyer with you.

THE DEBTOR: Okay. July 10th. Fair enough, Your Honor.

And, just, you know, if you don't mind --

THE COURT: Yes. Go ahead.

THE DEBTOR: -- you know, I'm just going to go into the case a bit. But, you know, this whole situation where we're at right now emanates because Plaintiff's attorney did not want to accept the funds that are in escrow right now, which we tried tirelessly to attain from family and friends. There's 12,500 sitting in there for the Plaintiff's attorney to take. But Plaintiff's attorney decided not to take that because Plaintiff's attorney ultimately wanted that judgment.

And so, you know, I ultimately settled because at that moment because we didn't have funds to continue to trial to prove my innocence in this claim that he was asserting against me. And so we settled. But, you know, ultimately he's being very, you know, antagonistic -- I don't know -- what he will word to you, essentially, but he was just trying to come after us, trying to injure us financially or what have -- any which way he can think of. He was just trying to come after us, ultimately.

And, you know, I was not entirely involved in this case to begin with. It all emanates from my father. I just tried to help my father out as a son would, and then so ultimately, you know, he's coming after me, and we've tried to settle even though I do not have funds. I, my father, we all went out to family and friends to get that lump sum payment

that was ultimately due, which we missed because of financial obstacle that came in the way, which we ultimately did come up with after three weeks. But when we went to Court, Plaintiff's attorney decided that that wasn't good enough anymore after three weeks.

So, I'm mulling it over.

THE COURT: So how much is at issue here?

THE DEBTOR: Sorry?

THE COURT: How much is -- how much -- what's the amount of money that's at issue here?

MR. DESIDERIO: Judgment's 140,000 less interest from --

THE COURT: And he paid how much on that?

MR. DESIDERIO: He's paid nothing. The judgment was entered in March of last -- March of 2013.

THE COURT: Weren't there installment payments made?

MR. DESIDERIO: He's made no payments on the judgment. That was on a --

THE COURT: What --

MR. DESIDERIO: -- prior settlement, prior to --

THE COURT: So in other words, you got to enter judgment for the full amount --

MR. DESIDERIO: -- based on his failure to live up to the settlement, yes.

THE COURT: -- even though he had paid you some of the --

MR. DESIDERIO: Some of the settlement amount.

THE COURT: Some of the settlement amount.

MR. DESIDERIO: Correct.

THE COURT: But you say you sort of got a punitive judgment that way?

MR. DESIDERIO: Well, no. It was for the amount of the -- of the fraud non-convey -- it was the total amount --

THE COURT: But without --

MR. DESIDERIO: -- of the fraudulent conveyances.

THE COURT: -- were any -- without any credit for the payments made?

MR. DESIDERIO: Oh, no, no. With the payments -- the payments were credited to the total amount. Absolutely.

THE COURT: Okay. I'm wondering if this is an appropriate case for mediation.

MR. DESIDERIO: We have made -- and Ms. Sobers will agree -- the most generous of settlement offers in this matter, and it has been thrown back at us repeatedly.

THE DEBTOR: Your Honor, may I jump in here? None of the settlement offers -- initially to begin with was essentially the lump sum payment, the 140,000, broken down into installments, essentially. That's what he started off with.

THE COURT: Uh-huh.

THE DEBTOR: And obviously when I added that up, I started laughing, and I was like, you know, obviously he's not working with us here. He's not trying to help us out here. You know, were not settling. Obviously, he's just asking for the entire amount just broken up into payments.

And so we went back and forth, but he's still asking for lots of money, lump sum in the beginning, and monthly payments for five years, and then, ultimately at the end of those five years, another lump sum payment. And one of the terms was that, you know --

THE COURT: Well, you really shouldn't be telling me this. I really shouldn't be hearing about the substance of your settlement discussions.

THE DEBTOR: All right. I'm just --

THE COURT: That's not something that I'm allowed -- I'm supposed to be involved in.

THE DEBTOR: Sure, Your Honor. I just, you know, obviously feel, you know, really upset about this. You know, I was, like I said, not really involved with everything that emanated with my father and Plaintiff's client. You know, I was a student back then, so, you know -- and we -- and I ultimately told my father when he did sue me, that, okay, fine, because we don't have any funds, let's just settle, even though I was --

THE COURT: What I -- I'll tell you what I could do.

THE DEBTOR: My culpability -- okay. Go ahead.

THE COURT: I could send this to mediation, and I could appoint a mediation advocate for you. That, we could do so that you have somebody to represent you in the context of the mediation.

MR. DESIDERIO: Your Honor, I don't see the -- I don't see this going anywhere in mediation. Like I said, we've bent over backwards with our last offer. It was the most generous offer we could make.

THE COURT: Well, okay. You know, I -- I'll take what you're saying at face value, but let me think about this. I'm thinking -- and I -- you -- whether you want to mediate or not, I can still send you.

MR. DESIDERIO: Of course.

THE COURT: And if I --

MR. DESIDERIO: I'm just telling you we're not going any further down. I mean, we've gone down to the bottom --

THE COURT: Well, I --

MR. DESIDERIO: -- and they are not --

THE COURT: -- I hear you, but I don't -- I don't buy that.

THE DEBTOR: And, Your Honor, ultimately, I mean, if you look at my situation, my father's situation, my father's partner's situation, ultimately this guy is just being very abusive with the entire legal system here. I mean, I

understand there was some culpability maybe back, way back, more than maybe ten years ago, but I had no involvement.

THE COURT: Okay.

THE DEBTOR: I was barely involved --

THE COURT: All right.

THE DEBTOR: -- in this situation.

THE COURT: Okay. Well, let's --

THE DEBTOR: And it's really upsetting. I'm --

THE COURT: -- let's do this. Let --

THE DEBTOR: I'm 30 years old, Your Honor, I'm just -- I'm 30 years old and I'm just trying to move ahead with my life. I graduated in 2008 and, you know, ultimately I graduated at a bad time, trying to find a job. But two years right after graduating, I was dealt with a lawsuit from Plaintiff's attorney. And so, you know, I was dealing with trying to scramble for a job, looking for a job, and then dealing with something that I was barely involved with. I understand there's a lot of details to this case, I understand there's lots of corporations, what have you, but my ultimate aim was just to help out my father.

THE COURT: Okay. So why don't you see about -- why don't we continue this, and if I -- if I think about this and determine that mediation is appropriate, I'll issue an order directing that this be sent to mediation. But -- and -- and I will -- if -- and if you want a mediation advocate to be

appointed, I will indicate a way for you to reach out to chambers for me to provide that.

THE DEBTOR: Okay.

THE COURT: See about providing that.

MR. DESIDERIO: Your Honor, if I may, we can't even negotiate on even ground because Mr. Devani has failed to produce documentation of numerous corporations that he owns, including one which they admit is ongoing and takes in over a hundred thousand dollars a month in sales. I don't know what their profit is, but there are four -- at least four active entities that Mr. Devani owns an interest in. He's failed to produce any of the documentation for those companies. He's failed to produce his bank -- his bank records, his personal bank records for three years prior to the filing. He's failed to produce his tax returns for the last six years.

We have no financial information on this person at all. How can we --

THE COURT: Why would you be entitled to his tax returns for the last six years?

MR. DESIDERIO: To find out how much money he has, what assets he has, what's -- what corporations he's -- what other corporations he's listed in his tax returns that's --

THE DEBTOR: And ultimately, Your Honor, he's asking for -- you know, that's part of his tactic. I mean, that's what he's been doing with my father and my father's partner in

the past. He's tried to come up with asking for documents that are not really relevant or maybe documents that may be outdated to provide at the present moment.

And so he's just trying to find loopholes within the system where he can, like, abuse it, and then, you know, tell the system that, you know, guess what, they were not able to come up with the documents. So you just grant me my judgment.

MR. DESIDERIO: We filed our 2004 application. It was granted by Your Honor.

THE DEBTOR: And we provided --

MR. DESIDERIO: It was unopposed. We were entitled to these documents. He never produced these documents. We have no idea what this Debtor has, what his financial condition is, what his business transactions are. The basis for our judgment is multiple fraudulent conveyances from the father to son. We have found out recently that the son, the business that he owns now, he owned originally by himself, but now his mother and father own interest in those businesses.

THE DEBTOR: Your Honor --

MR. DESIDERIO: So it's no longer his business alone.

THE DEBTOR: Your Honor, I testified to the Trustee that that was never the situation what he's talking about with the present corporation. We have a family business right now. And that was never the situation. We've provided every single document that he's requested.

THE COURT: Well, do you -- have you had -- you -- but you haven't had the deposition yet?

MR. DESIDERIO: He's refused to appear. We've had several dates set; the last one was set on April 28th, as well as for the deposition of my client. I produced my client, even though she didn't -- never even demanded it, and they never appeared.

THE DEBTOR: I mean, how -- I'm not -- you know, I'm not in this industry. So, you know, I don't have access to information. I mean, if there was a deposition, we would've appeared for it. Follow me?

THE COURT: Let me hear from Ms. Sobers.

MS. SOBERS: I had advised Creditor to hold off on the deposition because we were -- not to disclose settlement, but we were at the point where I felt we were going to basically settle right at that moment or very soon thereafter. So I told him to hold off on the deposition because we were about to settle.

So it wasn't that we simply didn't show up. I advised him that let's hold off.

THE DEBTOR: So, Your Honor, ultimately, you know, Plaintiff's attorney is suggesting that we're coming up with different facts, but obviously as you can see now, that he, too, is coming up with different facts here. So, you know, and we've provided all the documents that are necessary. And my

father also filed a bankruptcy in the past from which he has documents that are applicable to my bankruptcy as well, because ultimately, I'm tied into that as well.

So, you know, his assertion that documents have not been provided, I mean, I don't know how that's reliable. I mean, we've done our best to come up with documents. I mean, we don't have every single piece of paper that he's requesting, but we did our best.

MR. DESIDERIO: Not a single individual bank statement --

THE DEBTOR: And he's going to say that, but, you know --

MR. DESIDERIO: Not a single individual bank statement.

MR. DEVANI: It was --

MR. DESIDERIO: May I finish?

MR. DEVANI: I'm explaining --

THE COURT: Okay. Please, sir, don't speak. You're out of order.

MS. SOBERS: Your Honor, should I withdraw, or would you like me to stay?

THE COURT: No, you should stay.

MR. DESIDERIO: Not a single bank statement for the three years prior to the filing of his personal bank accounts.

THE COURT: Do you have a bank account?

MR. DESIDERIO: It's disclosed in the petition.

THE DEBTOR: Yeah, I mean, I have a joint bank account with my family, my mother and father, because we have a business, family business.

THE COURT: So were you -- why were you not able to provide bank statements?

THE DEBTOR: I provided everything that he requested.

MR. DESIDERIO: He produced three bank statements for his businesses that all postdate the bankruptcy filing, not one for the years prior to, for the ongoing -- for the businesses he's presently running.

THE COURT: Do not keep your bank statements?

THE DEBTOR: We do. Yes.

THE COURT: Well, then --

THE DEBTOR: I mean, I can request them from the bank as well. I mean, I don't understand how he's making that claim. I mean, we provided everything that he's requested, essentially. I mean, ultimately, we weren't able to go back maybe 15 years, maybe, but --

THE COURT: Okay.

THE DEBTOR: -- we did everything that he --

THE COURT: I don't -- I don't think we can get -- I can get involved in this right now. So, I think -- because you

don't -- you don't have an attorney here who's representing you at this point.

So I think we're going to have to adjourn this and I'll see about the possibility of mediation.

THE DEBTOR: Okay.

THE COURT: But July 10th at 3:30. Bring an attorney with you if you're going to -- if you're able to get one.

THE DEBTOR: I'll do my best, Your Honor. Thank you. But, yeah.

THE COURT: Okay.

MS. SOBERS: Thank you.

THE DEBTOR: Thank you.

THE COURT: Ms. Sobers, are you going to prepare the motion -- the order on your withdrawal motion?

MS. SOBERS: I apologize. I'm sorry?

THE COURT: Are you going to prepare the order on your withdrawal motion?

MS. SOBERS: Yes. I'll submit it to chambers for a signature.

THE COURT: Okay. Thank you.

MS. SOBERS: Thank you.

THE DEBTOR: Thank you, Your Honor.

THE COURT: Oh, Miss -- thank you.

Ms. Sobers?

MS. SOBERS: Yes, Your Honor?

THE COURT: The motion to seal seems to me is moot --

MS. SOBERS: It's moot, yeah.

THE COURT: -- at this point. So, I'll mark it withdrawn, I guess.

MS. SOBERS: Yes, Your Honor. Thank you.

THE COURT: Okay. Thank you.

(Proceedings Concluded)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated: July 1, 2014

[signature]

AVTranz, Inc.
845 North 3rd Avenue
Phoenix, AZ 85013